IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| SMITH BARNEY, a DIVISION OF<br>CITIGROUP GLOBAL MARKETS, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>BRYAN R. SAMPSON, CONNIE HEINEN<br>and ROBERT W. BAIRD & CO.,<br><br>*Defendants*. | Case No. Case No. 3:09-cv-54 |

**PLAINTIFF'S APPLICATION FOR**
**TEMPORARY INJUNCTIVE RELIEF IN AID OF ARBITRATION**

Plaintiff Smith Barney, A Division of Citigroup Global Markets, Inc. ("Smith Barney") files this Application For Injunctive Relief In Aid of Arbitration against Defendants Bryan R. Sampson ("Sampson"), Connie Heinen ("Heinen") and Robert W. Baird & Co. ("Baird").

## I.   INTRODUCTION

This is a classic case of employee disloyalty, misappropriation of confidential information and trade secrets, and unfair competition.  Bryan R. Sampson was a Financial Consultant, and Connie Heinen was his assistant, at Smith Barney's Davenport, Iowa office until they unexpectedly resigned on Friday, March 27, 2009.  Soon thereafter, and apparently prior to that time, they breached the confidentiality and non-solicitation covenants of their respective agreements with Smith Barney by contacting Smith Barney clients and urging Smith Barney clients to move their accounts to their new employer, Baird.

This is an action for temporary and preliminary injunctive relief, pending an arbitration hearing on the merits before the Financial Industry Regulatory Authority[1] ("FINRA") under Rule

---

[1]   The Financial Industry Regulatory Authority ("FINRA") was created in July 2007 through the consolidation of the National Association of Securities Dealers, Inc. (the "NASD") and the member regulation, enforcement and

13804 of the FINRA Code of Arbitration Procedure, resulting from Defendants' continuing (i) breach of contract; (ii) breach of fiduciary duty; (iii) misappropriation of trade secrets and confidential information; and (iv) unfair competition[2]. In breach of their contractual and common law duties, Sampson and Heinen have willfully and maliciously misappropriated Smith Barney's trade secrets in the form of client lists and other client information and used this information to solicit Smith Barney's customers for themselves and their new employer, Baird. Unless this court restrains them, Defendants will continue their unlawful activity to the immediate and irreparable harm of Smith Barney.

## II.    PARTIES, JURISDICTION, AND VENUE

1. Smith Barney is a New York corporation with its principal place of business in New York, New York. It is not a citizen of the State of Iowa. Smith Barney is duly registered and licensed to do business in Iowa.

2. Bryan R. Sampson is a citizen of Iowa and worked at all relevant times to this dispute in Davenport, Iowa. He may be served at his place of residence at 5004 Norwood Drive, Bettendorf, Iowa 52722.

3. Connie Heinen is a citizen of Iowa and worked at all relevant times to this dispute in Davenport, Iowa. She may be served at her place of residence at 2324 Madison Street, Davenport, Iowa 52804.

4. Robert W. Baird & Co. is a Wisconsin corporation with its principal place of business located in Milwaukee, Wisconsin. Robert W. Baird & Co. may be served by serving its

---

arbitration functions of the New York Stock Exchange. Smith Barney has the express right to seek temporary injunctive relief before a court of competent jurisdiction pending the outcome of arbitration before a panel of duly-appointed arbitrators pursuant to Rule 13804 of the FINRA Code of Arbitration Procedure for Industry Disputes.

[2] Plaintiff has prepared and is concurrently filing a Statement of Claim in Arbitration with FINRA (formerly the NASD).

registered agent for service of process, National Registered Agents, Inc., 604 Locust Street, Suite 222, Des Moines, Iowa 50309.

## III.    JURISDICTION AND VENUE

5. This is an action for claims arising out of Defendants' breach of contract, breach of fiduciary duty, misappropriation of trade secrets and confidential information and unfair competition.

6. The district courts of the United States have original jurisdiction over this action based on complete diversity of citizenship between the parties, in that every defendant is diverse in citizenship from every plaintiff. No defendant is a citizen of New York. Moreover, this matter is a dispute which involves greater than $75,000 exclusive of interest and costs. Because this action is wholly between citizens of different states, and because the matter in controversy exceeds the sum or value of $75,000, exclusively of interest and costs, this Court has original jurisdiction over this cause pursuant to 28 U.S.C. § 1332 (a)(1).

7. Venue is proper in the Southern District of Iowa, Davenport Division, under 28 U.S.C. § 1391(a) because a substantial part of the events at issue in this dispute occurred in this District and all of Defendants reside in or conduct(ed) business operations in this District and are subject to personal jurisdiction in this District.

## IV.    THE FACTS

*A.    The Parties.*

8. Smith Barney is a full service brokerage firm that, among other things, maintains client brokerage accounts and assists clients in trading stocks, bonds, and other financial investments.

9. Sampson was a Financial Consultant at Smith Barney's Davenport, Iowa offices until his March 27, 2009 resignation. As a Financial Consultant, Sampson served as a broker for Smith Barney client accounts.

3

10.     Heinen was a Sales Assistant to Sampson at Smith Barney's Davenport, Iowa offices until her March 27, 2009 resignation.

11.     Baird is Sampson and Heinen's new employer, which is also a brokerage firm, and, among other things, maintains client brokerage accounts and assists clients in trading stocks, bonds, and other financial investments.

**B.     *Immediately After, and even Prior to, Sampson and Heinen's Resignations They Began to Solicit Smith Barney Customers.***

12.     On Friday, March 27, 2009, Sampson and Heinen unexpectedly resigned.

13.     Soon thereafter, if not before, they breached the confidentiality, non-disclosure and non-solicitation covenants of their agreements with Smith Barney by contacting Smith Barney clients and urging Smith Barney clients to move their accounts to their new employer, Baird.

14.     Defendants have also misappropriated confidential trade secret information in the form of customer lists and other customer information and appear to have provided that information to agents of Baird prior to their resignation and are now using such information to solicit Smith Barney's clients for themselves and Baird, a direct competitor of Smith Barney. Smith Barney is aware of numerous pre-resignation solicitations made by Sampson and/or Heinen to clients of Smith Barney both by telephone call and personal visits.  Some of these clients have, in fact, indicated that they intend to transfer their client accounts to Defendants' new employer, Baird.  Furthermore, the same day on which Defendants resigned, numerous Smith Barney clients received solicitation materials sent by Sampson from his new Baird email address.  In order for such solicitations to have been made prior to and simultaneously with their resignations, it is clear that Defendants must have improperly removed the confidential client information from Smith Barney *prior to* their resignation.  Defendants clearly possess and are using Smith Barney's confidential trade secret customer information to solicit Smith Barney's

clients to transfer their accounts to Baird.  Unless restrained by this court, Defendants will continue their illegal activity to the immediate and irreparable harm of Smith Barney.

15. This is an action for temporary and preliminary injunctive relief, pending an arbitration hearing on the merits before the FINRA under Rule 13804 of the FINRA Code of Arbitration Procedure, resulting from Defendants' continuing breach of contract, breach of fiduciary duty, misappropriation of trade secrets and confidential information, and unfair competition.  In breach of their common law duties, Defendants have willfully and maliciously misappropriated Smith Barney's trade secrets in the form of customer lists and other customer information and used such information to solicit Smith Barney's customers for their new employer, Baird.  Unless restrained by this Court, Defendants will continue their illegal activity to the immediate and irreparable harm of Smith Barney.

### C.   *Defendants' Agreements With Smith Barney.*

16. Smith Barney's predecessor in interest, Shearson Lehman/American Express, Inc. ("Lehman") hired Defendant Sampson as a Financial Consultant on or about March 17, 1988. When Defendant commenced his employment position as a Financial Consultant with Lehman, he had no previous experience as a Financial Consultant and no assets under his management. Defendant Sampson received specialized training, licensing, and access to numerous Lehman, later Smith Barney, client accounts because of his employment with Lehman/Smith Barney.

17. When Sampson began his career as a Financial Consultant with Smith Barney, he executed various agreements which restricted his post-employment activities.  More specifically, Sampson executed a Financial Consultant Training Contract (the "FC Contract").  A true and correct copy of the FC Contract is attached hereto as Exhibit A. The FC Contract contains the following material terms:

> **CONFIDENTIALITY OF RECORDS:**
>
> I understand that any customer records and information including names and addresses, whether generated by [Smith Barney] or me, are an important business asset of [Smith Barney]. I will use such originals or copies of information only in the normal course of [Smith Barney's] business and will not remove any customer related records from [Smith Barney's] premises during or after my employment nor will I ever transfer such information to any third party either orally or in writing.
>
> **A.     COVENANT NOT TO COMPETE OR SOLICIT:**
>
> If I leave [Smith Barney] for any reason referred to in "C" below, I will not, within ninety (90) days of my leaving:
>
> 1. Work at another broker/dealer as a registered representative within thirty-five (35) miles of any [Smith Barney] office at which I've worked, or
>
> 2. Solicit any of the clients I serviced at any [Smith Barney] branch or any clients I learned of during my employment at any Smith Barney branch.

18.   In addition to the FC Contract, Sampson also entered into a Confidentiality Agreement ("CA Agreement") with Smith Barney. A true and correct copy of the CA Agreement is attached hereto as Exhibit B. The CA Agreement contains the following material language:

> All information related to the business activities of the Firm and any of its subsidiaries and affiliated companies and his clients that may be obtained by you from any source as a result of your employment shall be considered as confidential. Material contained in client files should always be regarded as confidential pursuant to the Firm's *Privacy/Fair Information Practices – Code of Conduct* distributed to you upon your employment as well as information relating to any matters that have not been publicly announced.
>
> ….
>
> Upon termination of your employment, you are required to deliver to the Firm all documents or other tangible form which you have in your possession which contain or are derived from any such confidential information.

19.   Heinen commenced her employment with Smith Barney on or about August 23,

2001 as a sales assistant. When Heinen commenced her employment with Smith Barney, she entered into a Sales Assistant Agreement ("SA Agreement"). A true and correct copy of the SA Agreement is attached hereto as Exhibit C. That agreement contains the following material terms:

> I understand that in the course of rendering my employment services to Smith Barney ("the Firm"), I will have access to, or be exposed to confidential and proprietary information. In this regard, I hereby acknowledge that this list, or lists, of the Firm's customers, in whatever form or forms embodied, and as they may exist from time to time, and any other personal or financial information pertaining to such customers, including but not limited to their addresses, telephone numbers, investment objectives, interests or preferences, are valuable, special and unique assets of the business that the Firm has expended an immeasurable amount of time and money to acquire.
>
> I will not, during or after the term of my employment, disclose the list(s) of customers or any other information pertaining to such customers or the manner in which the Firm conducts its business, to any person, Firm, corporation, association, or other entity for any reason or purpose whatever.
>
> In addition, I agree that upon termination of my employment with the Firm, irrespective of its time, manner, or cause, I will surrender to the Firm all customer client lists and all books, records, documents, and other written information received or obtained by me which relate to the Firm's customers or business.
>
> **I further agree that for a period of twenty-four months following the termination of my association with the Firm, I will not directly or indirectly solicit, or cause to be solicited, any business from any of the Firm's customers, clients or accounts.**
>
> I agree and acknowledge that the restrictions contained herein are reasonable and necessary in light of the unique nature of the Firm's business….
>
> Furthermore, I agree that the Firm shall be entitled to an injunction (from a court of competent jurisdiction) specifically restraining me from soliciting customers, clients and accounts, and/or from disclosing in whole or in part, the Firm's customer lists , confidential information or trade secrets.

(emphasis added).

20. In addition to the SA Agreement, Heinen also executed an agreement titled

"Salomon Smith Barney, Inc. Terms of Employment" ("Employment Agreement"). A true and correct copy of the Employment Agreement is attached hereto as Exhibit D. In the Employment Agreement, Heinen agreed to the following material terms:

> You agree that during your employment you may have access to or acquire client, competitive and other business information from Salomon Smith Barney or from its employees, clients or customers that is unique and which cannot be lawfully duplicated or easily acquired. You understand and agree that you have a continuing obligation not to use, publish or otherwise disclose either during or after your employment with Salomon Smith Barney, except in the furtherance of Salomon Smith Barney's business, any trade secrets, confidential or proprietary information belonging to, or concerning or referring to Salomon Smith Barney, or any client or customer of Salomon Smith Barney. You acknowledge that should you breach this provision, Salomon Smith Barney will suffer immediate and irreparable harm and that the money damages will be inadequate relief. Therefore, you agree that Salomon Smith Barney will be entitled to injunctive relief to enforce this paragraph and you consent to the issuance by a court of competent jurisdiction of a temporary restraining order, preliminary or permanent injunction to enforce its rights under this paragraph.

> You agree upon termination of your employment, you will immediately surrender to the Firm all customer or client lists, all books, records, documents and other information, whether original, duplicated, computerized, handwritten or in any other form, in your possession which relate to the Firm's customers or business.

> You agree that for a period of twelve months following the termination of your employment, you will not directly or indirectly solicit or cause to be solicited, any business from any of the Firm's customers, clients or accounts.

21. Heinen also acknowledged the following through Smith Barney's "Principles of Employment", which is attached hereto as Exhibit E:

> You must not do anything which may be a conflict of interest with your responsibilities as an employee.

> [Y]ou must never use (except when necessary in your employment with us) nor disclose with anyone not affiliated with Citigroup or its affiliates or subsidiaries any confidential or unpublished information you obtain as a result of your employment with us. This applies both while you are employed with us and after that employment ends. If you leave our employ, you may not retain or take with you any writing or other record which relates to the above.

8

22.     In consideration of the covenants contained in the FC Contract, CA Agreement, SA Agreement, Employment Agreement and Principles of Employment cited above, Smith Barney compensated Sampson and Heinen, provided them with employment related benefits, trained them, registered Sampson with various exchanges, licensed him in numerous states, provided him with office facilities and sales support, executed, processed and provided clearing house transaction for him, provided research and investment recommendations for him, and supervised the development of his career.  Smith Barney also provided Sampson with operational and sales systems, management supervision, compliance oversight, Smith Barney's reputation, good name and goodwill, product inventory, marketing reporting services, and Smith Barney's expertise in tax, insurance, estate planning, asset management and other services, assets and benefits.

23.     Furthermore, Smith Barney also provided Sampson with access to several of its long-time clients and prospects, all of whom were clients or prospects of Smith Barney for many years prior to his employment with Smith Barney.

### D.     *Wasting No Time, Defendants Used This Confidential Information to Solicit Smith Barney Customers Prior to and Following Their Resignations*

24.     Based on their accelerated contact with Smith Barney's customers, it appears that, prior to their resignation from Smith Barney, Defendants removed certain proprietary Smith Barney property which included client lists containing confidential Smith Barney client account information.

25.     Since Sampson and Heinen resigned, Smith Barney has learned that they have been violating the terms of their agreements by soliciting Smith Barney clients to move their accounts to Baird.  To date, Smith Barney is aware that Sampson and/or Heinen have contacted and directly spoken with at least thirteen Smith Barney customers to solicit them to move their accounts from Smith Barney to Baird –in each of these instances the clients have reported that

they were solicited while Sampson and Heinen were still employed by Smith Barney. For example, mere hours after Sampson's resignation, a Smith Barney client, George Pratt, indicated that Sampson had already visited with him about his move to Baird and <u>he had already completed the transfer paperwork</u> to move his account from Smith Barney to Baird.

26. In fact, in at least six instances, clients have indicated that they were solicited to transfer their accounts as much as two to three weeks prior to Sampson and Heinen's resignations. For example, two clients, Kathy Fredericksen and Dorothy House have communicated that they were aware of Sampon's intention to resign from Smith Barney well before his resignation and that they also committed to transfer their accounts to him at his new employer, Baird, weeks before he actually resigned. And, what is more, in at least one of these instances, Sampson even solicited the transfer in person. One client has told Smith Barney that Sampson came to visit he and his wife about three weeks ago informing him that Sampson and Heinen were both leaving Smith Barney and requested that he and his wife move their accounts to his new employer, Baird.

27. Furthermore, on the very day that Sampson terminated his employment with Smith Barney, he sent a mass email from his new email address at his new employer, Baird, to most, if not all, of his Smith Barney clients. At least one Smith Barney client has confirmed that he received this email and that it appeared to have been sent as a mass email communication to all clients.

28. In order to solicit Smith Barney's clients on such an expedited basis, Sampson and/or Heinen must have improperly retained confidential and proprietary customer account information. In fact, prior to their resignations, Sampson and Heinen neither returned nor delivered any customer files to Smith Barney. Moreover, upon searching their working area, it was apparent that numerous customer files had been improperly removed from Smith Barney.

10

Furthermore, in searching the client files of the Smith Barney branch in which Sampson and Heinen worked, it appears as though at least seven client files have gone missing altogether, presumptively removed by Sampson and/or Heinen in their entirety. Sampson and Heinen took these steps to give themselves an unfair, improper business advantage at their new employer, Baird.

29. Sampson and Heinen gained access to this customer information solely by virtue of their employment at Smith Barney as well as the specific agreements they signed. If Sampson and Heinen are allowed to continue to solicit Smith Barney customers, the damage to the goodwill and client relations we have developed over many years will be incalculable.

30. As a result of Sampson and Heinen's improper solicitations, a number of Smith Barney customers have already transferred, or completed paperwork to transfer, their accounts from Smith Barney to Baird, and several other Smith Barney customers have indicated that, in response to the solicitation of Sampson and Heinen, they may soon formally request that their accounts be transferred from Smith Barney to Baird as well.

31. As discussed above, Defendants gained access to customer information by virtue of their employment at Smith Barney and the contracts they signed. If Defendants are allowed to continue to solicit Smith Barney customers, the damage to the goodwill and client relations that Smith Barney has developed over many years will be incalculable.

**E.    *Smith Barney Protects Its Trade Secrets and Confidential Information.***

32. Smith Barney's business is national in scope and one of its competitors is Baird. Both Smith Barney and Baird have offices in the Davenport, Iowa area.

33. To protect itself from unfair competition, Smith Barney makes substantial efforts to ensure the confidentiality of information concerning its clients. In addition to the contractual provisions set forth above, Smith Barney requires its Financial Consultant and sales assistants to abide by employee policies and procedures that specifically treat client information as Smith

Barney property and prohibit the use or disclosure of this information other than in connection with Smith Barney's business. Moreover, Smith Barney maintains policies safeguarding client information to protect customers' privacy interests and keep this information strictly internal so that it does not fall into the hands of Smith Barney's competitors. These policies prohibit providing client information to any third party. Obviously, any disclosure of Smith Barney's client information to competitors would give those competitors a substantial, unfair advantage in soliciting Smith Barney's customers.

34. The Smith Barney branch in which Defendants worked exerts substantial efforts to maintain the secrecy and confidentiality of Smith Barney's client records, including information identifying its clients. Smith Barney keeps its office locked and secure during non-working hours and a security firm monitors the building. The computer system is password-protected and only the broker, his or her sales assistant, the branch manager and necessary operational personnel have access to the broker's account information. Financial Consultants do not have access to other Financial Consultants' account information unless authorized. Customer information that Smith Barney is required to maintain is kept secure in the broker's office or in the operations area, a locked, restricted area.

35. Smith Barney derives actual and potential economic value from its customer information and customer lists in part because this information is not generally known to and not readily ascertainable through proper means by other persons who can obtain economic value from his disclosure or use.

### V. CAUSES OF ACTION

#### A. Count One - Breach of Contract

36. Smith Barney incorporates by reference paragraphs 1 through 35 above.

37. Defendants have materially breached their respective Agreements with Smith Barney by (i) using and disclosing Smith Barney's confidential information; (ii) removing Smith

12

Barney's confidential information for purposes other than conducting Smith Barney's business; and (iii) soliciting Smith Barney's customers. Further, Defendants will continue to commit such breaches unless this court restrains them from doing so.

38. Smith Barney has fulfilled in all material respects all of its contractual obligations under the FC Agreement, CA Agreement, SA Agreement, Employment Agreement and Principles of Employment.

39. Therefore, Smith Barney is entitled to a temporary restraining order and a preliminary injunction requiring Defendants to return the confidential information and records that they removed from Smith Barney and enjoining them from (i) using or disclosing Smith Barney's confidential information; and (ii) soliciting (directly or indirectly) any of the clients they serviced while employed with Smith Barney or learned about from Smith Barney's confidential information or during their Smith Barney employment.

### B.   Count Two - Breach of Fiduciary Duty

40. Smith Barney incorporates by reference paragraphs 1 through 39, above.

41. As a Smith Barney Financial Consultant and Sales Assistant Defendants owed fiduciary duties to Smith Barney under Iowa law. These fiduciary duties include a duty to maintain the confidence and secrecy of Smith Barney's client information and not to disclose this information to Smith Barney's competitors, and duties of loyalty, honesty, utmost good faith, and no self-dealing.

42. Defendants have breached their fiduciary duties to Smith Barney by copying or otherwise removing Smith Barney's client account information from Smith Barney's premises and improperly using and disclosing this information in an effort to pirate away Smith Barney's client accounts.

43. Therefore, Smith Barney is entitled to a temporary restraining order and a preliminary injunction enjoining Defendants from (i) any further use or disclosure of Smith

Barney's confidential information; and (ii) soliciting (directly or indirectly) any of the clients they serviced or learned of while employed with Smith Barney or learned about from Smith Barney's confidential information or during their Smith Barney employment.

### C.   *Count Three - Misappropriation Of Trade Secrets And Confidential Information*

44.   Smith Barney incorporates by reference paragraphs 1 through 43, above.

45.   Smith Barney's client lists and client information constitute trade secrets and confidential information under Iowa common law.

46.   Defendants obtained Smith Barney's trade secrets and confidential information, including, without limitation, Smith Barney's client lists and client information, by improper means, including theft, breach of contractual duty, and breach of fiduciary duty.

47.   The Smith Barney trade secrets and confidential information that Defendants improperly obtained are known only to Smith Barney and those to whom Smith Barney disclosed the information in confidence. The trade secrets and confidential information are not matters of public knowledge or generally known within the industry.  Moreover, Smith Barney has taken reasonable precautions to preserve the secrecy of the trade secrets and confidential information.

48.   Smith Barney obtained its trade secrets and confidential information after expending substantial time, efforts, and expense.  Additionally, Smith Barney's trade secrets and confidential information have enabled it to obtain a fair and lawful competitive advantage over those who do not know or have the right to use its trade secrets and confidential information.

49.   Defendants' misappropriation of Smith Barney's trade secrets and confidential information was and is willful and malicious because they intentionally attempted to benefit from using and disclosing Smith Barney's trade secrets and confidential information to the injury of Smith Barney.  Defendants are well aware that the information they used and disclosed was to remain confidential and knew of the importance of its confidentiality to Smith Barney.

50.     If not immediately enjoined from doing so, Defendants will continue to unlawfully use and disclose Smith Barney's trade secrets and confidential information.

51.     If not immediately enjoined from doing so, Defendants' unlawful use and disclosure of Smith Barney's trade secrets and confidential information will continue to injure Smith Barney, and Smith Barney has no adequate remedy at law for this irreparable injury.

52.     Therefore, Smith Barney is entitled to a temporary restraining order and a preliminary injunction requiring Defendants to return the trade secrets, confidential information, and records that they removed from Smith Barney and enjoining them from (i) using or disclosing Smith Barney's trade secrets and confidential information; and (ii) soliciting (directly or indirectly) any of the clients they serviced while employed with Smith Barney or learned about from Smith Barney's confidential information or during their Smith Barney employment.

### D.     *Count Four - Unfair Competition*

53.     Smith Barney incorporates by reference paragraphs 1 through 52, above.

54.     Defendants' conduct described above constitutes unfair competition under Iowa law.  Defendants actively participated in, induced, or conspired to carry out all of the acts of unfair competition outlined above.  Moreover, Defendants' acts of unfair competition are willful and intentional.

55.     Unless this court enjoins them from doing so, Defendants will continue their acts of unfair competition, causing Smith Barney immediate, irreparable damage for which it has no adequate remedy at law.

56.     Therefore, Smith Barney is entitled to a temporary restraining order and a preliminary injunction enjoining Defendants from any further acts of unfair competition.

## VI.     **PRAYER**

Therefore, Smith Barney respectfully requests:

(a)     With respect to Count One, a temporary restraining order and a preliminary injunction requiring Defendants to return the confidential information and records that they removed from Smith Barney and enjoining them and anyone acting in concert with them from (i) using or disclosing Smith Barney's confidential information; and (ii) soliciting (directly or indirectly) any of the clients they serviced while employed with Smith Barney or learned about from Smith Barney's confidential information or during their Smith Barney employment;

(b)     With respect to Count Two, a temporary restraining order and a preliminary injunction enjoining Defendants and anyone acting in concert with them from (i) any further use or disclosure of Smith Barney's confidential information; and (ii) soliciting (directly or indirectly), any of the clients they serviced while employed with Smith Barney or learned about from Smith Barney's confidential information or during their Smith Barney employment;

(c)     With respect to Count Three, a temporary restraining order and a preliminary injunction requiring Defendants and anyone acting in concert with them to return the trade secrets, confidential information, and records that they removed from Smith Barney and enjoining them from (i) using or disclosing Smith Barney's trade secrets and confidential information; and (ii) soliciting (directly or indirectly) any of the clients they serviced while employed with Smith Barney or learned about from Smith Barney's confidential information or during their Smith Barney employment;

(d)     With respect to Count Four, a temporary restraining order and a preliminary injunction enjoining Defendants from any further acts of unfair competition;

(e)     That the Court permit Smith Barney to conduct expedited discovery in this matter;

(f)     That the Court permit this case to proceed to expedited arbitration on the merits before FINRA; and

(g)     That the Court grant Smith Barney all other relief to which it is justly entitled.

Respectfully Submitted,

SMITH BARNEY, a DIVISION OF CITIGROUP GLOBAL MARKETS, INC.,

                Plaintiff

By: /s/ Matthew P. Pappas
    Matthew P. Pappas
    Terri L. Fildes
    PAPPAS, HUBBARD, O'CONNOR
    FILDES, SECARAS, P.C.
    1617 Second Avenue, Suite 300
    Rock Island, IL 61201
    Telephone:  (309) 788-7110
    Facsimile:  (309) 788-2773

And

    Matthew B. Henneman
    Jennifer L. Moseley
    WATT, BECKWORTH,
    THOMPSON & HENNEMAN, L.L.P.
    1800 Pennzoil Place, South Tower
    711 Louisiana Street
    Houston ,Texas 77002
    Telephone:  (713) 650-8100
    Facsimile:  (713) 650-8141

**Attorneys for Smith Barney, A Division of Citigroup Global Markets, Inc.**